UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAQUESE W., | ) |
| Plaintiff, | ) |
| | ) No. 23-cv-15821 |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| LELAND DUDEK, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jaquese W.[1] appeals the decision of the Defendant Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying him disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 17) is GRANTED, and the Commissioner's motion for summary judgment (Dkt. 19) is DENIED. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.     BACKGROUND**

   **A.     Procedural History**

On October 21, 2020 Plaintiff, who is classified as a younger individual, *see* 20 C.F.R. §§ 404.1563(c), 416.963(c), applied for supplemental security income ("SSI") alleging disability beginning on May 1, 2006; on January 1, 2021, when he first became eligible for disability insurance benefits ("DIB"), he applied for DIB. (Administrative Record ("R.") 28 (citing R. 322-23, 292-303.) Following initial and reconsideration denials of Plaintiff's applications (R. 82-95),

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

an Administrative Law Judge ("ALJ") held an Administrative Hearing and issued a March 31, 2023 decision finding Plaintiff not disabled (R. 28-44). The Appeals Council denied review (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner. Plaintiff appeals that decision. (Dkt. 1.)

      **B.**      **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant time. (R. 28-29, 31); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act for DIB from January 1, 2021 through September 30, 2021 and did not engage in substantial gainful activity after his alleged disability onset, although Plaintiff was employed below the substantial gainful activity level as a factory loader from 2017 through 2020. (R. 31-32.) At step two, the ALJ identified severe impairments of intellectual disorder and depressive/bipolar disorder. (R. 32.) The ALJ decided at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 32-36.) In making this determination, the ALJ evaluated Plaintiff's mental limitations and determined, consistent with State Agency evaluators' findings, Plaintiff had moderate limitations in all four paragraph B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 32-34.) The ALJ also found that the paragraphs A and C criteria were not met. (R. 34-36.)

Before step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels" with non-exertional limitations. (R. 36.) Specifically, the ALJ found Plaintiff "retains the capacity to understand, remember, concentrate, persist, and perform simple, routine, repetitive tasks with the ability to follow simple and detailed

instructions" if learning the tasks was "limited to a simple demonstration or simple uninvolved oral written or diagrammed instructions in a low stress environment" with "few, if any simple work related decisions and few, if any routine changes in the work setting, no interaction with the public, and occasional interaction with coworkers but no team tasks." (*Id.*) Plaintiff would also require a ten-minute break following two hours of work, which, the ALJ found, could "be accommodated by routine breaks and lunch." (*Id.*) At steps four and five, the ALJ concluded Plaintiff had no past relevant work but that three other jobs exist in sufficient numbers in the national economy that Plaintiff can perform, given his age, high school education, work experience, and RFC. (R. 41-44.) The ALJ therefore found Plaintiff was not disabled. (R. 44.)

### C. Standard of Review

Judicial review of the ALJ's factual determinations is confined to ensuring those findings are supported by substantial evidence. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citation omitted); *see also* 42 U.S.C. § 405(g). ALJs "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278-79 (7th Cir. 2022) (quoting *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021)). However, although an ALJ need not "address every piece of evidence or testimony presented," the ALJ "must provide a logical bridge between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Martinez*, 71 F.4th at 1080 (cleaned up).

## II. ANALYSIS

Even the Commissioner concedes that "the case is a close call" (Dkt. 20 at 7), with consultative and agency examiners having reached different opinions of Plaintiff's capabilities and limitations. It is. Even acknowledging the slight articulation required of ALJs, though, the Court

agrees with Plaintiff that the ALJ failed to build the required logical bridge between the evidence and her choice to jettison even the least restrictive of the psychological opinions regarding Plaintiff's mental limitations in the area set forth below.[2]

A few more facts are necessary. Although Plaintiff has a high school degree (or a GED), he did so with an Individualized Education Plan in place throughout school and said he also was "cut [] some slack" for his basketball skills. (R. 511.) In 2017, an evaluator assessed Plaintiff, in part, with marked limitations in his capacities for concentration, arithmetic calculation, and social judgment. (R. 38 (citing R. 505-07).) In early 2021, Plaintiff disclosed to a psychological evaluator that he babysat his four cousins for money at his home during the day and helped his grandmother, with whom he lives, with housework. (R. 39-40, 512.) That evaluator assessed Plaintiff with a full-scale IQ of 67, in the "deficient" range. (*Id*. at 39 (citing R. 514).) Among other opinions, the State Agency evaluators at the initial and reconsideration levels in 2021 opined Plaintiff was "[n]ot significantly limited" in the abilities "to understand and remember" and "carry out" "very short and simple instructions" but was "[m]oderately limited" in the abilities "to understand and remember" and "carry out" "detailed instructions." (R. 74-75.) In the initial-level evaluator's narrative of Plaintiff's related capacities or limitations, he opined Plaintiff could "understand and remember simple **but not detailed or complex instructions**" and "maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment." (R. 75-76 (emphasis added).) The reconsideration-level evaluator opined more restrictively that Plaintiff was limited to "**follow[ing] simple 1 and 2 step directions but not more complex ones** . . . due to cognitive limitations." (R. 88-89 (emphasis added).)

---

[2] The Court declines to address Plaintiff's remaining arguments except as set forth herein.

The ALJ generally found "persuasive" both State Agency evaluators' opinions that Plaintiff was moderately limited in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace because "they provided specific reasons . . . showing that the opinions were grounded in the evidence in the case records . . . and the allegations about the claimant's symptoms and limitations." (R. 32-33, 34.) However, the ALJ rejected both State Agency evaluators' assessed limitations on the types of instructions Plaintiff could understand, remember, apply, and perform on a sustained basis. (R. 36, 41.) The ALJ rebuffed the reconsideration-level evaluator's opinion that Plaintiff was limited to one- to two-step work tasks as "not fully supported and unpersuasive" because of Plaintiff's "admissions" to performing tasks the ALJ inferred must involve multiple steps, like caring for his four cousins for money; playing basketball and house cleaning; taking an Uber to an appointment; passing his driver's license test; and past "work as a factory loader, which has been classified as having an SVP of 2 at the higher end of unskilled work." (R. 41.) As for the initial-level evaluator's opinion that Plaintiff could understand and remember "simple but not detailed or complex instructions," the ALJ found it only "partially persuasive." (*Id*.) The ALJ acknowledged Plaintiff's IQ score was in the deficient range but found that other evidence, including Plaintiff's B math grades toward the end of high school, good memory and listening skills, and tasks noted above, undermined the evaluator's opined limitation. (*Id*.) The ALJ concluded Plaintiff had the mental RFC to "follow simple **and detailed** instructions with the ability to learn the tasks limited to a simple demonstration or simple uninvolved oral written or diagrammed instructions in a low stress environment . . .." (R. 36 (emphasis added).)

First, it is unclear how "detailed" instructions would be communicated through a "simple demonstration" or "simple uninvolved written or diagrammed instructions." Even setting that aside, though, the Court cannot follow the ALJ's reasoning in concluding Plaintiff required neither

5

a one- to two-step task limitation nor a limitation on the detail or complexity of tasks. First, much of the evidence the ALJ relied upon in disagreeing with the State Agency evaluators[3] was not only before those evaluators but also cited by them in rendering their opinions regarding Plaintiff's mental capabilities. (*See* R. 69-70, 71-72, 84-85, 87 (noting Plaintiff had arrived at an appointment by Uber, passed his driver's test without actually getting his license, previously worked in a factory, and completed 12 years of education).) While the ALJ need not accept the psychological evaluators' recommendations in the face of contrary evidence in the record, it is "logically ambiguous" to rely "on the same evidence that the [psychological] consultants[] [explicitly] considered" in rendering their opinions to reach the ALJ's "own [different] conclusions." *Scott F. v. Kijakazi*, No. 1:21-cv-02065-JMS-DLP, 2022 WL 2352779, at *6 (S.D. Ind. June 30, 2022); *see also Rodney J. M. v. O'Malley*, No. 23-cv-50236, 2024 WL 3888867, at *4 (N.D. Ill. Aug. 21, 2024) ("[T]he records to which the ALJ cites, which Dr. Voss had at the time he rendered his opinion, do not necessarily undermine a one- to two-step task limitation.").

Second, even to the extent the ALJ relied upon items the State Agency psychological consultants did not reference (although the Court understands most, if not all, to have been in record before them), such as Plaintiff's B math grades toward the end of high school or Plaintiff's babysitting, she drew unsupported inferences from those. Without asking Plaintiff a single question about many of the tasks she identified (and few questions about any she did address), like babysitting his cousins, housecleaning, or arriving at an appointment by Uber,[4] the ALJ stated those tasks "could be considered more detailed" than the State Agency evaluators opined Plaintiff

---

[3] The Court will address below one component of Plaintiff's prior work that arguably the evaluators would not have known—the precise classification the VE assigned Plaintiff's factory job within the Department of Labor's Dictionary of Occupational Titles.

[4] The ALJ did not, for example, inquire about the ages of the children or hours or tasks involved in babysitting or address in conjunction with that Plaintiff's testimony that his child's mother did not allow him to watch their baby alone because he forgot to change her and feed her (R. 37). The ALJ also did not inquire of Plaintiff how he came to arrive at an appointment in an Uber, such as whether he booked the ride or it was booked for him.

was limited to in a work setting. But "a decision based on speculation is not supported by substantial evidence." *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). Nor does babysitting relatives inherently mean a claimant could understand, remember, or perform detailed work tasks for an eight-hour day. *See Rodney J. M.*, 2024 WL 3888867, at *5 (explaining that Court was unable to "trace the ALJ's logic about how" "sometimes" babysitting young grandchildren "translate[d] into Plaintiff's ability to concentrate and persist with work activities on a sustained basis"). In any event, "[c]ourts in this district have criticized ALJs for merely citing a claimant's ability to drive or perform a similar task that has more than two steps as a basis for rejecting a one- to two-step task limitation," *Rodney J. M.*, 2024 WL 3888867, at *4 (collecting cases), or for "gloss[ing] over," as the ALJ here did, that a claimant received "special education services" in school. *See Sergey S. v. O'Malley*, No. 21-cv-4966, 2024 WL 3398334, at *5 (N.D. Ill. July 11, 2024) (criticizing ALJ's focus on claimant's graduation with "mostly As and Bs . . . later in high school" where claimant "did so while receiving special education services").

The remaining evidence the Commissioner cites as bolstering the ALJ's opinion (Dkt. 20 at 5) is unavailing. Plaintiff's "articulate" speech, cooperative and respectful manner, "positive mood and [] bright affect," appropriate grooming, and good eye contact and comport during an evaluation simply do not aid in tracing the ALJ's reasoning in rejecting the complexity limitations.

The Court is concerned the ALJ did not properly consider the limiting effects of Plaintiff's condition or grapple with opposing evidence because her "analysis does not adequately explain how Plaintiff's activities of daily living support the decision to reject" both State Agency evaluators' opinions regarding Plaintiff's limitations. *See Rodney J. M.*, 2024 WL 3888867, at *5. Although the ALJ potentially may have supported a choice of either State Agency evaluator's opinion with appropriate reasoning, she did not logically bridge to the evidence her rejection of *both* the one- to two-step instruction limitation backed by the reconsideration-level evaluator *and*

7

the limitation to simple, not detailed or complex, instruction the initial-level evaluator set forth. While such an error, standing alone, would not necessarily merit remand, the Court cannot conclude from the existing record that the error was necessarily harmless because it is unclear whether significant jobs in the national economy would be available to Plaintiff given his characteristics, as explained below.

At step five of the disability analysis, the agency bears the burden of demonstrating there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations. 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2). "ALJs typically rely on [a vocational expert ("VE")] to list jobs in the national economy that claimants can perform[,]" *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022), as well as "information from the Dictionary of Occupational Titles" by the Department of Labor. SSR 00-4P, 2000 WL 1898704, at *1 (Dec. 4, 2000); *see also* U.S. Dep't of Labor, Emp. & Training Admin., Dictionary of Occupational Titles, 1991 WL 645958 (4th ed. 1991) ("DOT"). An ALJ must resolve obvious conflicts between a VE's testimony and the DOT, but the ALJ's failure to do so does "not merit reversal" when harmless. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *2-3 (7th Cir. July 22, 2022); *Collins v. Berryhill*, 743 F. App'x 21, 25-26 (7th Cir. 2018).

The DOT listing for every job title assigns it a reasoning level between 1 and 6. *See* DOT App'x C (listing "components of Definition Trailer" for DOT jobs). As is relevant here, jobs with reasoning level 1 require workers to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," *see* DOT App'x C; DOT § 794.687-034, while jobs at a reasoning level 2 require workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See id.* § 919.687-014. A claimant limited to "simple" or "unskilled" work tasks may be capable of performing jobs with a reasoning level of 2 or even 3, *see Kevin W. v. Kijakazi*, No. 20-cv-6557, 2023 WL 35178, at *4 (N.D. Ill. Jan. 4, 2023); *Vanhphenh S. v. Saul*,

8

No. 18-cv-6121, 2021 WL 1315633, at *4 (N.D. Ill. Apr. 8, 2021) (examining cases), but courts in this district "have repeatedly interpreted the restrict to 1-2 step tasks to limit a claimant to Level 1 Reasoning jobs." *Dustin S. v. O'Malley*, No. 21-cv-5693, 2024 WL 4836233, at *1 (N.D. Ill. Nov. 20, 2024) (citations omitted); *see also Kevin W.*, 2023 WL 35178, at *4 (listing cases). Moreover, an ALJ should be aware that a VE should not propose reasoning-level-2 jobs for a claimant with such a limitation. *See Dustin S.*, 2024 WL 4836233, at *3 ("The conflict [between the VE's testimony and the DOT] is [] grossly apparent from the DOT's definitions of Reasoning Level 1 . . . and Reasoning Level 2[.]").

Had the ALJ limited Plaintiff to one- or two-step tasks as the State Agency reconsideration-level evaluator opined was appropriate, therefore, he likely would be limited to reasoning level 1 jobs. It also appears likely (although the ALJ did not make a related inquiry of the VE) that Plaintiff may be foreclosed from reasoning level 2 jobs if the ALJ had limited him to "simple but not detailed or complex instructions" in line with the initial-level State Agency evaluator's opinion. The ALJ cited Plaintiff's past "work in a factory (which the VE testified was akin to the DOT title of "Factory Helper, DOT § 529.686-034") as an indication he could perform "detailed" tasks because Factory Helper is classified as an "SVP2" job in the DOT (R. 41), meaning it requires training of "[a]nything beyond a short demonstration up to and including 1 month." DOT § 529.686-034. But the classification of that job as SVP2 does not provide insight into whether Plaintiff could understand and remember and carry out multi-step instructions over a full workday as a reasoning level 2 jobs requires.[5] In fact, the Factory Helper position is a reasoning level 1

---

[5] The Court briefly touches upon one other claim Plaintiff raises here—that he is "functionally illiterate." (Dkt. 18 at 14-15). The ALJ did not explicitly address Plaintiff's reading level, although, based upon the record, it seems probable she did not understand Plaintiff—who obtained a GED and worked as a Factory Helper, indicated he could read and write simple messages and send and receive emails and surf the internet, and testified he can read—was claiming he reads so poorly as to foreclose all work. (*See* R. 38, 85, 336, 549).) The DOT classifies the Factory Helper job Plaintiff performed at a reading level 1, *see* DOT § 919.687-014, undermining his argument that he cannot read at even that minimal level. (*See* Dkt. 18 at 14-15.) It nevertheless may behoove the ALJ to evaluate Plaintiff's reading level on remand.

position and therefore lends no credence to the idea that Plaintiff can follow detailed instructions consistent with reasoning level 2. Nevertheless, the ALJ's error would be harmless if the ALJ identified only jobs with a reasoning level of 1 in step 5. Accordingly, the Court examines the reasoning levels of the jobs the ALJ identified as available to Plaintiff: Silver Wrapper, Cleaner II, and Paper-Pattern Folder.

The first of the jobs, Silver Wrapper, DOT § 318.687-018 (7,400 jobs nationally), is removed from consideration because, after the ALJ's decision here, the SSA released Emergency Message, "EM 24027," identifying it as a job that may not be performed today as DOT describes; the Commissioner does not rely upon Silver Wrapper to meet its burden at step 5. (Dkt. 20 at 8.)[6]

Cleaner II, DOT § 919.687-014, is a reasoning level 2 position with 54,500 jobs nationally. (R. 42.) The ALJ did not ask the VE whether the job would be available to someone with a one- to two-step task or no-detailed-or-complex-instruction restriction. The Court therefore must assume Plaintiff could not perform the Cleaner II position, excluding its 54,500 national positions from consideration.

The last job, Paper-Pattern folder, DOT § 794.687-034, is a reasoning level 1 and thus should be within Plaintiff's abilities even if he were restrictively limited to one- to two-step tasks. That said, there are only 6,100 positions nationwide, according to the VE. (R. 42, 565.)[7] The ALJ did not determine whether the Paper-Pattern Folding title, by itself, has significant numbers in the

---

[6] "Paper-Pattern Folder" is not listed in EM 24027, but Plaintiff insists without citation that "[i]t strains common sense that" it now would be performed as the DOT describes it, so it is also obsolete. (Dkt. 18 at 13.) But, as the Commissioner states (Dkt. 20 at 8-9), Plaintiff did not preserve this argument (which identifies no conflict between the VE testimony and the DOT) by asking the VE those questions. Plaintiff did not reply. (Dkt. 21.) The Court finds the argument forfeited. *See Kameka B. v. Kijakazi*, No. 21-cv-860, 2022 WL 3154207, at *3 (N.D. Ill. Aug. 8, 2022).

[7] Plaintiff overstates the VE's testimony, saying the VE testified the Paper-Pattern Folder "job was not at significant numbers in the national economy." (Dkt. 18 at 13.) But the VE only provided the number of available positions without reference to significance. Even had the VE's testimony been as Plaintiff described it, in the administrative proceedings, it is the ALJ's (not the VE's) role to determine whether the stated numbers of jobs are significant in the national economy. *Milhem v. Kijakazi*, 52 F.4th 688, 696 (7th Cir. 2022).

national economy. (*See* R. 44 (finding "a sufficient number of jobs exist in the [three] above-cited positions for an individual with [Plaintiff's RFC].").) Case law is indeterminate on whether 6,100 jobs nationally is significant, *see Taskila v. Comm'r v. Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs nationally to be a significant number in national economy); *but see John C. v. Saul*, No. 19 C 411, 2021 WL 794780, at *6 (C.D. Ill. Mar. 2, 2021) (finding 20,000 jobs not significant in national economy); *James A. v. Saul*, 471 F. Supp. 3d 856, 860 (N.D. Ind. 2020) ("To the Court's knowledge, 14,500 is far below any national number of jobs that the Seventh Circuit . . . has determined to be significant."),[8] so the Court cannot deem the ALJ's error harmless. *See Rodney J. M.*, 2024 WL 3888867, at *5 ("[T]his Court cannot say that the ALJ's decision to omit the one- to two-step limitation was harmless because each of the jobs cited by the ALJ had a reasoning level of 2 or higher" and "the ALJ did not ask the vocational expert whether these jobs would be available to someone with a one- to two-step task restriction."). Accordingly, the Court remands the case.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 17) is granted. The Commissioner's motion (Dkt. 19) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: March 10, 2025

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge

---

[8] Although there are cases discussing job numbers of 1,000 or even fewer, those cases address job numbers in the claimant's city or metropolitan area, rather than the national economy, and therefore provide no guidance here. *See, e.g., Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (addressing 4,000 jobs in the Milwaukee area); *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993) (addressing 1,400 jobs "in the greater Milwaukee metropolitan area"). The Seventh Circuit has observed that other circuits have found nationwide job numbers between 10,000 and 32,000 as significant in the national economy. *Milhem*, 52 F.4th at 696-97.

11